UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

FRED ALSTON, *as a Trustee of the Local 272 Labor Management Pension Fund, and as a Trustee of the Local 272 Welfare Fund*,

                Plaintiff,

-v-

NAGLE PARKING INC., NAGLE PARKING MANAGEMENT LLC, *and* NAGLE PARKING NO. 2 INC.,

                Defendants.

23 Civ. 1739 (PAE)

DEFAULT JUDGMENT

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

On February 28, 2023, plaintiff Fred Alston ("Alston") brought this action, as a trustee of two employment benefit plans, alleging violations of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Dkt. 1 ("Compl."). Alston alleges defendants failed to make required contributions to the Local 272 Labor Management Pension Fund and the Local 272 Welfare Fund (together, "funds"), and to permit the trustees of those funds to audit their records to evaluate the adequacy of defendants' contributions. *Id.* ¶¶ 2–26. The funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), *id.* ¶ 6, which in turn are administered within the meaning of section 502(e)(2) of ERISA, *id.* ¶ 7. Defendants are "trades and businesses . . . under common control" within the meaning of section 3(37)(B) of ERISA, 29 U.S.C. § 1002(37)(B), *id.* ¶ 10, and employers within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), *id.* ¶ 11.

**I.**     **Entry of Default Judgment**

1

Defendants entered into contracts, to which the funds were the third-party beneficiaries. *Id.* ¶ 16. These contracts were effective from March 6, 2015 to March 5, 2022, and renewed for the period of March 6, 2022 to September 8, 2023. *Id.* ¶ 15.

Alston now moves for a default judgment directing defendants to provide their books from the period of October 1, 2021 to present for an audit and to pay the contributions owed, and for attorneys' fees and costs under § 502 of ERISA. *See* Dkt. 22.

On March 17, 2023, Alston served defendants, Dkts. 7–9, making their deadline to answer or otherwise respond April 7, 2023. No defendant has answered or otherwise appeared, and the time for answering the Complaint has expired as to all of them.

On April 21, 2023, when the time to answer had expired but Alston had not moved for default judgment, the Court ordered Alston to show cause why the above-captioned case should not be dismissed for failure to prosecute. Dkt. 10.

On April 26, 2023, Alston filed for entry of default judgment with the Clerk of Court as against all defendants. Dkts. 17–18. The same day, the Clerk of Court issued a certificate of default. Dkt. 19. On May 2 and 3, 2023, Alston moved for default judgment against all defendants, Dkt. 24, and filed a memorandum of law, Dkt. 23, statement of damages, Dkt. 21, declaration, exhibits, Dkt. 25, and proposed default judgment, Dkt. 22, in support.

On May 10, 2023, the Court ordered any defendant wishing to oppose the motion to show cause, by May 26, 2023, why a default judgment is not warranted. Dkt. 30. The Court also ordered Alston to serve defendants with a copy of its order and file proof of that service on the docket. *Id.* Alston did not do so. On May 24, 2023, the Court ordered Alston, again, to serve defendants with the May 10 order. Dkt. 31. Alston served all defendants the next day. Dkts. 32–34. On June 14,

2

2023, the Court ordered Alston to file the collective bargaining agreement ("CBA") and declarations of trust of the benefits funds on the docket, to aid the Court's review of his motion for default judgment. Dkt. 35. Alston did so the next day. Dkts. 36–40.

The Court has carefully reviewed those filings, Alston's motion for default judgment, and his supporting submissions. At the pleading stage, allegations that an employer failed to remit contributions to an ERISA plan in accordance with the terms of the CBA, such as Alston's allegations here, are sufficient to plead liability under ERISA. *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs v. Rizzo Env't Servs. Corp.*, No. 22 Civ. 556 (NGG) (LB), 2022 WL 1460585, at *3 (E.D.N.Y. May 9, 2022); *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16 Civ. 318 (SJ) (SJB), 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018) (finding liability where complaint alleged that the defendant was employer who failed to make contributions as required by a CBA), *report and recommendation adopted by*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018); *Finkel v. Allstar Elec. Corp.*, No. 11 Civ. 3222 (KAM) (RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) (alleged failure to make required contributions under CBA terms sufficient to plead liability under ERISA); *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013) (finding ERISA claim adequately alleged where complaint stated that the employer failed to make ERISA contributions). Because proof of service has been filed, each defendant has failed to answer the Complaint, the time for doing so has expired, and each defendant has failed to appear to contest the entry of default judgment, the Court enters a default judgment for Alston against all defendants. Defendants are ordered to permit Alston to review their books and records relating to the funds for the period of October 1, 2021 to present.

## II.      Attorneys' Fees and Costs

Alston also requests attorneys' fees and costs. Under ERISA, "[i]n any action . . . by a fiduciary for or on behalf of the plan," where "a judgment in favor of the plan is awarded, the court shall award the plan reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). An award of fees and costs is also provided for in the agreements governing defendants' obligations to Alston. *See* Dkt. 21 ¶ 2; *see also* Dkts. 36–40. The Court awards attorneys' fees and costs here, as outlined below.

### A.      Calculation of Fees

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 167 (internal citation omitted). A fee application must be accompanied by supporting materials, including contemporaneous time logs and affidavits. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). Alston's attorney, Jeffrey S. Dubin, Esq., has filed a statement that includes such records. Dkt. 21.

#### 1.      Reasonable Rates

The Court begins by determining a reasonable rate. In determining a reasonable rate, district courts are to consider case-specific variables known as the "*Johnson* factors." These include:

4

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983). A district court need not recite and make separate findings as to all 12 *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award. *See Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009).

Dubin bills at a rate of $330/hour. Dkt. 21-3 at 2–3; Dkt. 23 at 5–6. Dubin, who has an L.L.M. and J.D. from New York University Law School, has practiced at a firm specializing in ERISA-related litigation for over 40 years. *See* Dkt. 21-3 at 2–3. After considering the *Johnson* factors, and following the lead of other courts in this Circuit, the Court finds Dubin's rate reasonable. *See, e.g.*, *Rizzo Env't Servs. Corp.*, 2022 WL 1460585, at *6 (collecting cases) ($300 to $450/hour reasonable rate for partners in ERISA context); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20 Civ. 6894 (LJL) (KHP), 2021 WL 2556130, at *5 (S.D.N.Y. May 13, 2021) (same, $350/hour), *report and recommendation adopted sub nom. Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

### 2. Reasonable Hours

However, Dubin's fee request of $5,676 based on a total of 17.20 hours' work reflects excessive hours with respect to this default judgment motion. Dkt. 21 ¶ 2(E). Once a reasonable rate of pay has been calculated, it is multiplied by a reasonable number of hours expended to

5

determine the award amount.  The Court has the discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary."  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).  To determine the reasonableness of hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage.  *Hensley*, 461 U.S. at 436–37; *see also McDonald*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal quotation marks omitted)).  "[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Several aspects of Dubin's reported hours are excessive.

First, Dubin has billed five hours[1] to draft the Complaint (excluding time spent performing clerical tasks related to it).  *See* Dkt. 21-1 at 2.  The Complaint is bare-bones.  It consists of a 2.5-page statement of basic facts, and a 3.5-page recitation of the (familiar) relief requested.  *See* Dkt. 1.  Dubin has also billed an additional 7.9 hours for drafting materials in support of default judgment.  Dkt 21-1 at 3.  These materials, too, are largely formulaic.  They principally consist of an eight-page memorandum of law that largely quotes familiar legal standards from relevant statutes and cases, and germane portions of the agreements at issue here.

---

[1] The invoice lists 1.50 hours for "Check SOS records. Draft audit Complaint for Nagle Parking" and another 2.50 hours for "ECF Complaint, Rule 7.1; Civil Cover Sheet." Dkt. 21-1 at 2.  The Court reads the latter of these entries as involving the drafting of these materials, because Dubin elsewhere represents that he spent 1.6 hours—which, with the 2.5 hours added, would result in an improbable total of 4.1 hours—docketing the Complaint and Rule 7.1 disclosure, on February 26 and 28, 2022.  *Id.*

6

Dubin has not explained why, given his extensive experience in this practice area, so much time was necessary to draft either document.

The billing statement also contains multiple time entries, totaling to three hours, for docketing "all information." *Id.* at 2–3. But Dubin does not explain why, for example, 1.6 hours were required across February 26 and February 28, 2022 to docket the Complaint and review the Court's rules. *See id.* at 2. Given Dubin's decades of experience in this District, the simple task of docketing ought not have taken so long.

Considering these factors, and the brevity and lack of complexity of this action, the Court finds an across-the-board 50% reduction necessary to make Dubin's claimed hours reasonable. That aligns the hours billed here with those billed in default judgments of similar simplicity in other courts in this Circuit. *See, e.g., Rizzo Env't Servs. Corp.*, 2022 WL 1460585, at *7 (awarding fees for 6.25 hours of work in ERISA default judgment action); *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Sabre Tile Corp.*, No. 19 Civ. 6075 (AMD) (RER), 2021 WL 2742745, at *4 (E.D.N.Y. June 1, 2021) (same, 2.8 hours), *report and recommendation adopted*, 2021 WL 2741648 (E.D.N.Y. July 1, 2021). A 50% reduction here is particularly warranted given Dubin's expertise in ERISA litigation in this Circuit and District, which is a basis for the billing rate the Court has approved. *See Fox*, 563 U.S. at 838.

Accordingly, the Court awards $2,838.00 in attorney's fees.

**B.     Costs**

Alston also requests a total of $943.40 in costs, consisting of a $402.00 filing fee, a $1.40 PACER fee, and $540.00 in process server fees. Dkt. 21-2 at 2. The Court awards such costs.

7

## CONCLUSION

For the reasons above, the Court grants plaintiff's motion for default judgment and injunctive relief, and orders defendants to permit Alston to audit the books for the period of October 1, 2021 to present. Upon completion of the audit, Alston may apply for additional relief as provided for under ERISA. The Court awards Alston $2,838.00 in attorney's fees and $943.40 in costs.

Alston shall serve this Order upon each defendant and file affidavits reflecting such service on the docket by June 28, 2023. The Court orders Alston to file a revised proposed judgment, consistent with the above, by the same date. The Clerk of the Court is respectfully directed to terminate the motion pending at docket 24.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 23, 2023
       New York, New York